UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
In re:

Boaz Arik Gilad,

                              Debtor.
-------------------------------------------------------------X
David J. Doyaga, Sr., Solely as Chapter 7
Trustee of the Estate of Boaz Arik Gilad,

                              Plaintiff,

              v.

Assaf Fitoussi, Ori Management, Inc., Yaron Babila,
and Lior Advisors, Inc.,

                              Defendants.

-------------------------------------------------------------X

Chapter 7

Case No.:  1-20-43233-jmm

Adv. Pro. No.:  1-22-01071-jmm


**MEMORANDUM DECISION ON DEFENDANTS YARON BABILA AND LIOR
ADVISORS, INC.'S AND DEFENDANTS ASSAF FITOUSSI AND ORI MANAGEMENT
INC.'S MOTIONS TO DISMISS PLAINTIFF'S COMPLAINT**

Arvum J. Rosen, Esq.
Alex E. Tsionis, Esq.
Law Offices of Avrum J. Rosen, PLLC
38 New Street
Huntington, NY 11743
*Counsel for Plaintiff*

Rocco A. Cavaliere, Esq.
Tarter Krinsky & Drogin LLP
1350 Broadway, 11th Floor
New York, NY 10018
*Counsel for Defendants Assaf
Fitoussi and Ori Management,
Inc.*

Elizabeth Plowman, Esq.
Stephen B. Selbst, Esq.
Herrick, Feinstein LLP
2 Park Avenue
New York, NY 10016
*Counsel for Defendants
Yaron Babila and Lior
Advisors, Inc.*

## INTRODUCTION

The plaintiff in this adversary proceeding is David J. Doyaga, Sr., the chapter 7 trustee ("Plaintiff") of the estate of Boaz Arik Gilad ("Gilad"). Gilad owned fifty percent of the interests in Brookland Capital, LLC ("Brookland") and certain related entities. Defendant Assaf Fitoussi ("Fitoussi") was Brookland's manager and owned the other fifty percent of the interests in Brookland and the related entities. Fitoussi owns or controls Defendant Ori Management, Inc. ("Ori Management"). Defendant Yaron Babila ("Babila") was Brookland's Chief Financial Officer and owns or controls Defendant Lior Advisors, Inc. ("Lior Advisors").

Prepetition, Gilad purchased Fitoussi's interests in Brookland and the related entities for $6 million. A portion of the sale proceeds was paid to Ori Management. Plaintiff alleges Fitoussi and Babila were secretly working together to trick Gilad into paying an inflated price for Fitoussi's interests in Brookland and the related entities. Plaintiff further alleges that Fitoussi and Lior Advisors entered into an agreement for Fitoussi to pay Lior Advisors ten percent of the proceeds from the sale of Fitoussi's Brookland interests to Gilad as payment for Babila's assistance with the sale process. Plaintiff claims the payment is a kickback to Babila.

Plaintiff seeks to avoid the sale transaction and recover the $6 million in transfers to Fitoussi and Ori Management. Additionally, Plaintiff seeks damages from Fitoussi and Babila for breach of fiduciary duty. Lastly, Plaintiff seeks damages from Fitoussi, Babila, and Lior Advisors for fraud.

Fitoussi and Babila each moved to dismiss Plaintiff's claims under Rules 9 and 12(b) of the Federal Rules of Civil Procedure. Their motions were filed on behalf of themselves individually and on behalf of their respective companies. As set forth below, the defendants' motions to dismiss are granted in part and denied in part.

## JURISDICTION

The Court has jurisdiction over this adversary proceeding under 28 U.S.C. § 1334(b), 28 U.S.C. § 157(a), and the Standing Order of Reference entered by the United States District Court for the Eastern District of New York dated August 28, 1986, as amended by Order dated December 5, 2012.  Several of Plaintiff's claims against defendants are non-core.  Absent consent, a bankruptcy judge may not enter a final judgment in non-core matters.  *See* 28 U.S.C. § 157(c)(1). A bankruptcy court, however, may handle all pretrial proceedings, including entering an interlocutory order dismissing some, but not all, non-core causes of action in an adversary complaint.  *See In re Suffolk Reg'l Off-Track Betting Corp.*, 591 B.R. 127, 129 (Bankr. E.D.N.Y. 2018).

## PROCEDURAL BACKGROUND

Plaintiff filed a complaint (the "Complaint") commencing this adversary proceeding on August 31, 2022.  *Doyaga v. Fitoussi et al*, Adv. Pro. No. 1-22-01071, ECF No. 1.  Babila and Lior Advisors moved to dismiss the Complaint under Rules 9 and 12(b)(6) of the Federal Rules of Civil Procedure on November 30, 2022.  Defs. Babila and Lior Advisors' Mot. to Dismiss Adv. Pro., Adv. Pro.[1], ECF No. 15; Decl. of Selbst in Supp. of Defs. Babila and Lior Advisors' Mot. to Dismiss, Adv. Pro., ECF No. 16; Defs. Babila and Lior Advisors' Mem. of Law in Supp. of Mot. to Dismiss, Adv. Pro., ECF No. 17 (collectively, the "Babila Motion").  Fitoussi and Ori Management moved to dismiss the Complaint under Rules 9 and 12(b)(6) of the Federal Rules of Civil Procedure on December 5, 2022.  Defs. Fitoussi and Ori Management's Mot. to Dismiss Adv. Pro. and Supp. Mem. of Law and Joinder, Adv. Pro., ECF No. 19; Decl. of Cavaliere in Supp. of Defs. Fitoussi and Ori Management's Mot. to Dismiss, Adv. Pro., ECF No. 20 (collectively, the

---

[1] Citations to "Adv. Pro., ECF No. []" are to documents filed on the docket of this adversary proceeding.

"Fitoussi Motion").  Additionally, Fitoussi and Ori Management filed a joinder to the Babila Motion.  Defs. Fitoussi and Ori Management's Mot. To Dismiss Adv. Pro. and Supp. Mem. of Law and Joinder ¶¶ 17, 32, Adv. Pro., ECF No. 19.

Plaintiff objected to both motions on February 1, 2023.  Pl.'s Mem. of Law in Opp'n to Defs. Babila and Lior Advisors' Mot. to Dismiss, Adv. Pro., ECF No. 29; Pl.'s Mem. of Law in Opp'n to Defs. Fitoussi and Ori Management's Mot. to Dismiss, Adv. Pro., ECF No. 30.

Babila and Lior Advisors filed a reply to Plaintiff's objection to the Babila Motion on May 3, 2023.  Defs. Babila and Lior Advisors' Reply in Resp. to Pl.'s Mem. of Law in Opp'n to Defs. Babila and Lior Advisors' Mot. to Dismiss, Adv. Pro., ECF No. 40.  Fitoussi and Ori Management filed a reply to Plaintiff's objection to the Fitoussi Motion on May 3, 2023.  Defs. Fitoussi and Ori Management's Reply in Resp. to Pl.'s Mem. of Law in Opp'n to Defs. Fitoussi and Ori Management's Mot. to Dismiss, Adv. Pro., ECF No. 41; Suppl. Decl. of Cavaliere in Supp. of Defs. Fitoussi and Ori Management's Reply in Resp. to Pl.'s Mem. of Law in Opp'n to Defs. Fitoussi and Ori Management's Mot. to Dismiss, Adv. Pro., ECF No. 42.

The Court held oral argument on the motions to dismiss on May 16, 2023.

## FACTUAL BACKGROUND

### I.    The Bankruptcy Case

On September 3, 2020, Gilad filed a voluntary petition for relief under chapter 7 of title 11 of the United States Code (the "Bankruptcy Code") and Plaintiff was appointed as chapter 7 trustee of Gilad's estate.  *In re Boaz Arik Gilad*, Case No. 1-20-43233 (the "Bankruptcy Case"), ECF No. 1.

## II.    This Adversary Proceeding

Fitoussi and Gilad each held a fifty percent ownership interest in Brookland, Elevation Enterprises LLC, Roart Brooklyn LLC, Whiskey B. Holdings LLC, and Tirios Business Platforms Inc. (collectively, the "Related Entities" and together with Brookland, the "Brookland Entities"). Compl. ¶¶ 1, 2, 37, Adv. Pro., ECF No. 1.   Babila was Brookland's Chief Financial Officer. *Id.* ¶¶ 1, 38.   Babila owns or controls Lior Advisors. *Id.* ¶¶ 3, 63.   Fitoussi owns or controls Ori Management. *Id.* ¶ 49.

On May 2, 2017, Gilad and Fitoussi entered into an agreement providing for Fitoussi to sell his interests in the Brookland Entities to Gilad for $6 million, to be paid in installments over time. *Id.* ¶¶ 39, 40;   Decl. of Selbst in Supp. of Defs. Babila and Lior Advisors' Mot. to Dismiss Ex. 1, Adv. Pro., ECF No. 16 (the "Purchase Agreement").   Gilad allegedly defaulted under the Purchase Agreement by failing to pay certain installment payments.   Compl. ¶¶ 28, 41, 43, Adv. Pro., ECF No. 1.   The Purchase Agreement was amended twice to address Gilad's payment defaults. *Id.* ¶¶ 41, 43, 44.

The Second Amended Purchase Agreement required Gilad to obtain a loan from Prophet Credit Partners LP ("Prophet") to pay the outstanding balance owed under the Purchase Agreement to Fitoussi. *Id.* ¶¶ 45, 46.   On November 8, 2017, Gilad, Fitoussi, Prophet, and Brookland entered into a new agreement pursuant to which Prophet, on behalf of Gilad, paid Ori Management $3 million. *Id.* ¶¶ 48, 49; Decl. of Cavaliere in Supp. of Defs. Fitoussi and Ori Management's Mot. to Dismiss Ex. 3, Adv. Pro., ECF No. 20 (the "Prophet Agreement").   Plaintiff claims the $3 million represented the outstanding balance due under the Purchase Agreement as of November 8, 2017.   Compl. ¶¶ 48, 49, Adv. Pro., ECF No. 1.

The Purchase Agreement contains the following general release:

> Brookland, the [Related Entities] and [Gilad] on one hand and [Fitoussi] on the other hand, for themselves and for their members, managers, officers, heirs, personal representatives, successors and assigns, (collectively, the "Releasors") hereby release and forever discharge the other and all of the other's affiliates, agents, employees, officers, managers, members, heirs, personal representatives, successors and assigns (collectively, the "Releasees") of and from all actions, causes of action, suits, debts, sums of money, accounts reckonings, covenants, contracts, controversies, agreements, promises, damages, judgments, executions, claims, proceedings and demands of any character, nature and kind, in law or equity which Releasors ever had, now have or hereafter may have in the future against Releasees as the date hereof, of any kind or nature, made or which occurred prior to the date hereof, all of the above except to the extent that any such claim concerns a breach of any representations or warranty by Releasee or that Releasee has otherwise failed to comply with any obligations created by this Agreement. Without derogating from the foregoing, each of Brookland, the [Related Entities], [Gilad] and [Fitoussi] hereby confirms and acknowledges that as of the date hereof there is no such allegation known to him or it which has not been raised by him or it prior to the date hereof.

Purchase Agreement § 8.1 (the "Release").

On May 3, 2017, Fitoussi and Lior Advisors entered into a consulting agreement. Compl. ¶¶ 63, 65, Ex. A, Adv. Pro., ECF No. 1 (the "Consulting Agreement"). Under the Consulting Agreement, Lior Advisors agreed to provide consulting services to Fitoussi in connection with Fitoussi's sale of his interests in the Brookland Entities in exchange for ten percent of Fitoussi's sale proceeds. *Id.* ¶¶ 65, 66; Consulting Agreement.

Plaintiff claims that at the time of Gilad's purchase, Brookland was highly leveraged and Fitoussi knew or should have known his interests were worthless. Compl. ¶ 2, Adv. Pro., ECF No. 1. Plaintiff claims Fitoussi and Babila were secretly working together to trick Gilad into paying an inflated price for Fitoussi's interests in Brookland. *Id.* ¶¶ 3, 80, 82. As proof, Plaintiff points to the Consulting Agreement. *Id.* ¶¶ 63, 65, 66. Plaintiff claims Fitoussi and Babila intentionally did not disclose the Consulting Agreement to Gilad. *Id.* ¶¶ 3, 4, 80. Further, he claims the ten

percent fee payable to Lior Advisors is, in essence, a kickback to Babila for persuading Gilad to pay $6 million for the worthless interests. *Id.* ¶¶ 3, 4.

Plaintiff claims he learned of the fraudulent scheme when Lior Advisors attempted to domesticate a judgment against Fitoussi in New York, only two days prior to the expiration of the statute of limitations for certain causes of action. *Id.* ¶ 6; Tr. of May 16, 2023 Hr'g __:__. Apparently, Fitoussi failed to pay Lior Advisors in accordance with the Consulting Agreement which resulted in Lior Advisors obtaining an Israeli judgment against Fitoussi. Compl. ¶ 6, Adv. Pro., ECF No. 1. Lior Advisors then filed an action in New York State court to domesticate the judgment. *Id.*

Plaintiff asserts the following causes of action against Fitoussi, Babila, Lior Advisors, and Ori Management:

- The First, Second, Third, Fourth and Fifth Claims for Relief are asserted against Fitoussi and seek to avoid and recover the $6 million paid to Fitoussi by or on behalf of Gilad as a constructive fraudulent conveyance under New York Debtor Creditor Law sections 273, 274, and 275 and Bankruptcy Code sections 544 and 550;

- The Sixth, Seventh, Eighth, Ninth, and Tenth Claims for Relief are asserted against Ori Management and seek to recover the $3 million paid to Ori Management on behalf of Gilad as a constructive fraudulent conveyance under New York Debtor Creditor Law sections 273, 274, and 275 and Bankruptcy Code sections 544 and 550;

- The Eleventh Claim for Relief is asserted against Fitoussi, Babila, and Lior Advisors and seeks damages for fraud;

- The Twelfth Claim for Relief is asserted against Fitoussi and seeks damages for breach of fiduciary duty; and

- The Thirteenth Claim for Relief is asserted against Babila and seeks damages for breach of fiduciary duty.

## DISCUSSION

### I.    Standard for Motions to Dismiss

"To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570, 127 S. Ct. 1955, 1974, 167 L. Ed.2d 929, 949 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* Plausibility depends on a host of considerations: the full factual picture presented by the complaint, the particular cause of action and its elements, and the existence of alternative explanations so obvious that they render plaintiff's inferences unreasonable. *L- 7 Designs, Inc. v. Old Navy, LLC*, 647 F.3d 419, 430 (2d Cir. 2011).

A court need not consider allegations that are conclusory or subjective characterizations. *See Iqbal*, 556 U.S. at 678 ("Threadbare recitals of elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Twombly*, 550 U.S. at 545 ("[A] plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of a cause of action's elements will not do.") (internal quotations omitted). However, a court must accept all factual allegations in the complaint as true, even if the allegations are doubtful in fact. *See Twombly*, 550 U.S. at 555-56. Additionally, the court must draw all reasonable inferences in the plaintiff's favor. *See Bellin v. Zucker*, 6 F.4th 463, 473 (2d Cir. 2021). Further, in determining a motion to dismiss, a court's review is confined to the pleadings, documents attached to, or incorporated by reference in the complaint, matters of which judicial notice may be taken, and documents whose terms and effect are relied upon heavily in the complaint and thus are rendered "integral" to the complaint. *See Kaplan v. Lebanese Canadian*

*Bank, SAL*, 999 F.3d 842, 854 (2d Cir. 2021) (quoting *Tellabs, Inc. v. Makor Issues & Rts., Ltd.*, 551 U.S. 308, 322, 127 S.Ct. 2499, 168 L.Ed.2d 179 (2007)); *see also Chambers v. Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002) ("Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint relies heavily upon its terms and effect, which renders the document integral to the complaint.") (internal quotations and citation omitted).

## II.    Plaintiff's Claims for Breach of Fiduciary Duty are not Time Barred.

Babila and Fitoussi argue Plaintiff's claims for breach of fiduciary duty must be dismissed as they are time barred. The statute of limitations for a breach of fiduciary duty claim in New York is either three or six years, depending on the nature of the relief sought. *See IDT Corp. v. Morgan Stanley Dean Witter & Co.,* 12 N.Y.3d 132, 139, 879 N.Y.S.2d 355, 907 N.E.2d 268 (2009). The three-year statute of limitations applies if only money damages are sought, and the six-year statute of limitations applies if the relief sought is equitable in nature. *See Speedfit LLC v. Woodway USA, Inc.*, 53 F. Supp. 3d 561, 581–82 (E.D.N.Y. 2014); *In re Fischer*, 308 B.R. 631, 652–53 (Bankr. E.D.N.Y. 2004). Where a breach of fiduciary duty claim is based on allegations of fraud, the six-year statute of limitations in N.Y. C.P.L.R. § 213(8) applies. *See Kaufman v. Cohen,* 307 A.D.2d 113, 119, 760 N.Y.S.2d 157 (1st Dep't 2003) (citations omitted); *Cohen v. S.A.C. Trading Corp.,* 711 F.3d 353, 361 (2d Cir. 2013) (citations omitted).

The parties agree that the breach of fiduciary duty claims either arose on May 2, 2017, the date Gilad entered into the Purchase Agreement, or May 3, 2017, the date Fitoussi and Babila entered into the Consulting Agreement. Defs. Babila and Lior Advisors' Mem. of Law in Supp. of Mot. to Dismiss ¶ 42, Adv. Pro., ECF No. 17; Defs. Fitoussi and Ori Management's Mot. to Dismiss Adv. Pro. and Supp. Mem. of Law and Joinder ¶ 33, Adv. Pro., ECF No. 19; Pl.'s Mem. of Law in Opp'n to Defs. Babila and Lior Advisors' Mot. to Dismiss ¶ 50, Adv. Pro., ECF No. 29; Pl.'s Mem. of Law in Opp'n to Defs. Fitoussi and Ori Management's Mot. to Dismiss ¶ 80, Adv.

Pro., ECF No. 30. This adversary proceeding was not commenced until August 31, 2022, more than five years after the breach of fiduciary duty claims arose. Compl., Adv. Pro., ECF No. 1. Babila and Fitoussi claim the three-year statute of limitations period governs and expired on May 2 or 3, 2020. Defs. Babila and Lior Advisors' Mem. of Law in Supp. of Mot. to Dismiss ¶¶ 41-42, Adv. Pro., ECF No. 17; Defs. Fitoussi and Ori Management's Mot. to Dismiss Adv. Pro. and Supp. Mem. of Law and Joinder ¶ 33, Adv. Pro., ECF No. 19. Plaintiff claims the six-year statute of limitations period applies because the breach of fiduciary duty claims are based on fraud. Pl.'s Mem. of Law in Opp'n to Defs. Babila and Lior Advisors' Mot. to Dismiss ¶ 6, Adv. Pro., ECF No. 29; Pl.'s Mem. of Law in Opp'n to Defs. Fitoussi and Ori Management's Mot. to Dismiss ¶ 76, Adv. Pro., ECF No. 30.

Even assuming the three-year statute of limitations period applies to the breach of fiduciary duty claims, the cause of action is timely due to New York State executive orders tolling all statutes of limitations during the COVID-19 emergency and Bankruptcy Code section 108. On March 20, 2020, Governor Cuomo issued executive order 202.67 tolling all procedural deadlines. *See* Executive Order No. 202.6 (N.Y. Comp. Codes R. & Regs. tit 9, § 8.202.8, March 18, 2020) ("[A]ny specific time limit for the commencement, filing, or service of any legal action ... is hereby tolled from the date of this executive order until April 19, 2020."). Additional executive orders extended the toll until November 3, 2020. *See* Executive Order No. 202.72 (N.Y. Comp. Codes R. & Regs. tit. 9, § 8.202.8, November 3, 2020).

As of the March 20, 2020 executive order, approximately two months remained on the three-year statute of limitations period. When Gilad filed his petition on September 3, 2020, the toll was still in effect and the time to bring a breach of fiduciary duty claim had not yet expired. As the statute of limitations had not yet expired, Bankruptcy Code section 108(a) extended the

deadline for Plaintiff to commence a breach of fiduciary duty action until two years after the petition date. *See* 11 U.S.C. § 108(a). That date was September 3, 2022 – three days after the date that Plaintiff commenced this adversary proceeding.

Plaintiff did not raise the executive orders' impact on the statute of limitations in his oppositions to the motions to dismiss. Rather, at the May 16, 2023 oral argument on the motions to dismiss, the Court inquired whether the executive orders tolled Plaintiff's time to commence the action. Babila and Fitoussi argued that Plaintiff waived this argument by failing to raise it in the responsive papers. Tr. of May 16, 2023 Hr'g __:__.

Courts generally decide the issues presented by the parties as the parties present them. *See United States v. Sineneng-Smith*, 140 S. Ct. 1575, 1579, 206 L. Ed. 2d 866 (2020) (citing *Greenlaw v. United States*, 554 U.S. 237, 243, 128 S.Ct. 2559, 171 L.Ed.2d 399 (2008) ("[I]n both civil and criminal cases, in the first instance and on appeal . . ., we rely on the parties to frame the issues for decision and assign to courts the role of neutral arbiter of matters the parties present.")). However, "[w]hen an issue or claim is properly before the court, the court is not limited to the particular legal theories advanced by the parties, but rather retains the independent power to identify and apply the proper construction of governing law." *Kamen v. Kemper Fin. Servs., Inc.*, 500 U.S. 90, 99, 111 S. Ct. 1711, 1718, 114 L. Ed. 2d 152 (1991) (internal citations omitted). Accordingly, the Court may apply the correct rule of law respecting the statute of limitations applicable to Plaintiff's claims for breach of fiduciary duty. *Cf. New York City Transit Authority v. American Transit Insurance Co.*, 211 A.D.3d 643, 643 (N.Y. App. Div. 2022) (considering and applying New York's COVID-19 executive order to toll the statute of limitations period as an exception to the preservation rules because it is a purely legal argument).

Further, "[t]he Court may only dismiss an action based on the statute of limitations if, on the face of the complaint, it is clear the claim is untimely." *Atl. Int'l Movers, LLC v. Ocean World Lines, Inc.*, 914 F. Supp. 2d 267, 279 (E.D.N.Y. 2012) (internal citations omitted); *see also Staehr v. Hartford Fin. Servs. Grp., Inc.*, 547 F.3d 406, 425 (2d Cir. 2008) ("Dismissal under Fed. R. Civ. P. 12(b)(6) is appropriate [where] a defendant raises a statutory bar as an affirmative defense and it is clear from the face of the complaint, *and matters of which the court may take judicial notice*, that the plaintiff's claims are barred as a matter of law.") (internal citation omitted). The burden is on the defendant to establish that a claim is time barred. *See National Convention Services, L.L.C. v. Applied Underwriters Captive Risk Assurance Company, Inc.*, 239 F. Supp. 3d 761, 788 (S.D.N.Y. 2017); *Staehr*, 547 F.3d at 425. Babila and Fitoussi have failed to meet their burden to show the breach of fiduciary claims are time barred.

### III.    The Effect of the Release on Plaintiff's Claims

"A valid release constitutes a complete bar to an action on a claim" that "is the subject of the release." *Centro Empresarial Cempresa S.A. v. América Móvil, S.A.B. de C.V.*, 17 N.Y.3d 269, 276, 952 N.E.2d 995, 1000, 929 N.Y.S.2d 3, 9 (2011). "Under New York law, a release is governed by principles of contract law and a court should enforce a valid release by its clear terms." *In re Roman Cath. Diocese of Rockville Ctr., New York*, 650 B.R. 58, 69 (Bankr. S.D.N.Y. 2023) (citing *Gupta v. Headstrong, Inc.*, No. 17-cv-5286, 2018 WL 1634870, at *3 (S.D.N.Y. Mar. 30, 2018)). In *Centro*, the New York Court of Appeals set forth the standard for the treatment and enforcement of releases:

> If "the language of a release is clear and unambiguous, the signing of a release is a 'jural act' binding on the parties" (*Booth v 3669 Delaware*, 92 NY2d 934, 935 [1998], quoting *Mangini v McClurg*, 24 NY2d 556, 563 [1969]).

> [. . .]

> Notably, a release may encompass unknown claims, including unknown fraud claims, if the parties so intend and the agreement is "fairly and knowingly made" (*Mangini*, 24 NY2d at 566-567; *Alleghany Corp. v Kirby*, 333 F2d 327, 333 [2d Cir 1964]). . . . [A] party that releases a fraud claim may later challenge that release as fraudulently induced only if it can identify a separate fraud from the subject of the release (*see Bellefonte Re Ins. Co. v Argonaut Ins. Co.*, 757 F2d 523, 527-528 [2d Cir 1985]).

*Centro*, 17 N.Y.3d at 276; *see also Long v. O'Neill*, 126 A.D.3d 404, 408 (N.Y. App. Div. 2015) (holding that release barred fraud claims relating to the same subject matter as the contract containing the release, notwithstanding the contract parties "did not specifically refer to, or even know about, those fraud claims before executing their release").

A release may shield a fiduciary from claims, at least in instances where: (a) the releasor is sophisticated; (b) the fiduciary relationship is no longer one of unquestioning trust; (c) the principal understands that the fiduciary is acting in its own interest; and (d) the release is entered into knowingly. *See Centro*, 17 N.Y.3d at 278; *Pappas v. Tzolis*, 20 N.Y.3d 228, 232, 982 N.E.2d 576, 579, 958 N.Y.S.2d 656, 659 (2012).

### a. The Release Bars Plaintiff's Claims for Breach of Fiduciary Duty and Fraud against Fitoussi.

Plaintiff alleges Fitoussi, as Brookland's manager, owed a fiduciary duty to Gilad. Compl. ¶ 160, Adv. Pro., ECF No. 1. Plaintiff claims Fitoussi breached his fiduciary duty and defrauded Gilad by, among other things, failing to disclose the value of his Brookland interests or his relationship with Babila and Lior Advisors. *Id.* ¶¶ 160, 161, 162.

Fitoussi correctly argues that Plaintiff's claims for breach of fiduciary duty and fraud are barred by the Release. Defs. Fitoussi and Ori Management's Mot. to Dismiss Adv. Pro. and Supp. Mem. of Law and Joinder ¶¶ 32, 35, Adv. Pro., ECF No. 19; Defs. Fitoussi and Ori Management's Reply in Resp. to Pl.'s Mem. of Law in Opp'n to Defs. Fitoussi and Ori Management's Mot. to Dismiss ¶¶ 23-27, Adv. Pro., ECF No. 41.

Plaintiff argues there are three reasons why the Release does not apply to the claims against Fitoussi. Pl.'s Mem. of Law in Opp'n to Defs. Fitoussi and Ori Management's Mot. to Dismiss ¶¶ 58, 60, 61, Adv. Pro., ECF No. 30. First, Plaintiff argues the scope of the Release only extends to actions as of the date of the Purchase Agreement, May 2, 2017, or which occurred prior to the date of the Purchase Agreement. *Id.* Therefore, he claims the Release does not extend to the Consulting Agreement because it is dated May 3, 2017, one day after the Purchase Agreement. *Id.*

Plaintiff is correct that the Release only extends to claims that arose on or before May 2, 2017. However, the alleged actions that gave rise to Plaintiff's breach of fiduciary duty and fraud claims are Fitoussi's failure to disclose that (i) Fitoussi was secretly working with Babila, (ii) Fitoussi and Babila were conflicted, and (iii) Fitoussi and Babila were working together to increase the purchase price for Fitoussi's benefit and the consulting fee for Babila's benefit. Compl. ¶¶ 151, 154, 161, 162, 164, Adv. Pro., ECF No. 1. These alleged actions occurred on or before May 2, 2017 and, therefore, are within the scope of the Release.

Second, Plaintiff appears to argue the Release is void because Fitoussi violated the last sentence of the Release, which provides, "[*w]ithout derogating from the foregoing*, each of Brookland, the [Related Entities], [Gilad] and [Fitoussi] hereby confirms and acknowledges that as of the date hereof there is no such allegation known to him or it which has not been raised by him or it prior to the date hereof." Pl.'s Mem. of Law in Opp'n to Defs. Fitoussi and Ori Management's Mot. to Dismiss ¶ 60, Adv. Pro., ECF No. 30 (emphasis added). That language does not create an exception from the released claims for fraud or breach of fiduciary duty. The only claims excepted from the Release are claims for breach of a representation or warranty and claims for failure to comply with an obligation created by the Purchase Agreement. Release. Neither exception applies to the claims against Fitoussi for fraud or breach of fiduciary duty.

Third, Plaintiff unsuccessfully attempts to distinguish *Centro* and *Pappas*. Pl.'s Mem. of Law in Opp'n to Defs. Fitoussi and Ori Management's Mot. to Dismiss ¶¶ 63, 67, Adv. Pro., ECF No. 30. Those cases control because (i) Fitoussi was a known releasee, (ii) the Release does not exclude claims for fraud, breach of fiduciary duty, or unknown claims, and (iii) Plaintiff does not allege special facts upon which the Court may infer that the Release may be rendered unenforceable, such as by a separate fraud or duress. The factual distinctions between *Centro* and *Pappas* raised by Plaintiff are immaterial.

Based on the foregoing, Plaintiff's Eleventh Claim for fraud is dismissed as to Fitoussi and Plaintiff's Twelfth Claim for breach of fiduciary duty against Fitoussi also is dismissed.

### b. The Release does not Bar Plaintiff's Claims against Babila and Lior Advisors.

Plaintiff claims Babila, as Brookland's Chief Financial Officer, owed a fiduciary duty to Gilad. Compl. ¶ 171, Adv. Pro., ECF No. 1. Plaintiff alleges that Babila breached his fiduciary duty by, among other things, failing to disclose that Babila was assisting Fitoussi with his sale to Gilad of the Brookland interests. *Id.* ¶ 172. Plaintiff also claims Babila and Lior Advisors committed fraud by failing to disclose material information regarding the value of the Brookland interests to Gilad. *Id.* ¶¶ 151, 171.

Babila and Lior Advisors argue they benefit from the Release because they are Brookland's agents. Defs. Babila and Lior Advisors' Mem. of Law in Supp. of Mot. to Dismiss ¶ 36, Adv. Pro., ECF No. 17. The Release, however, does not provide for Gilad to release Brookland's agents. The Release is between the Brookland Entities and Gilad "*on one hand* and [Fitoussi] *on the other hand*." Release (emphasis added). Based on the Purchase Agreement's unambiguous language, the Release did not provide for Gilad to release claims against Brookland or its agents; it only released claims against Fitoussi and his agents.

Relying on *Centro* and *Pappas,* Babila and Lior Advisors argue they benefit from the Release because they are Fitoussi's agents.  Defs. Babila and Lior Advisors' Mem. of Law in Supp. of Mot. to Dismiss ¶¶ 33, 36, Adv. Pro., ECF No. 17.  Those cases, however, limit the effectiveness of a release of claims against a fiduciary that is not a knowing release.  *See Centro*, 17 N.Y.3d at 278; *Pappas*, 20 N.Y.3d at 232-33.  A court should enforce a release of a fiduciary only after consideration of whether the principal: (a) understood the fiduciary was acting in its own interest making reliance on the fiduciary unreasonable; and (b) knowingly entered into the release.  *See id.*

The Complaint alleges that Babila owed a fiduciary duty to Gilad (Compl. ¶ 171, Adv. Pro., ECF No. 1), Lior Advisors is owned and controlled by Babila (*Id.* ¶ 63), Babila was acting in his own interests (i.e., for his company, Lior Advisors, to maximize the ten percent fee under the Consulting Agreement) (*Id.* ¶ 66), and Gilad did not know Babila was acting in his own interests (*Id.* ¶¶ 3,80).  The Court may infer Gilad's reliance on Babila was reasonable because Babila was Brookland's Chief Financial Officer and owed a fiduciary duty to Gilad.  Further, Gilad was unaware that Babila was motivated to maximize the price for Fitoussi's Brookland interests. Uunlike Fitoussi, Babila and Lior Advisors were not known releasees.  Accepting these allegations as true – which the Court must do on a motion to dismiss – Plaintiff's claims against Babila and Lior Advisors for fraud and breach of fiduciary duty are not barred by the Release.

Babila does not contend the Complaint fails to adequately plead all elements of a claim for breach of fiduciary duty.  Therefore, the Babila Motion is denied to the extent it seeks dismissal of the Thirteenth Claim for Relief for breach of fiduciary duty.  The Court addresses Babila and Lior Advisors' request for dismissal of the Eleventh Claim for Relief for fraud below.

### c. The Release does not Bar Plaintiff's Claims to Avoid and Recover Fraudulent Conveyances from Fitoussi or Ori Management.

Bankruptcy Code section 544(b) empowers the trustee to avoid any transfer of an interest of the debtor in property that is voidable under applicable law by a creditor holding an unsecured claim. *See* 11 U.S.C. 544(b)(1). "In other words, [section] 544(b) allows the [trustee] to stand in the shoes of an existing unsecured creditor and bring a state fraudulent conveyance action, or other state law claim that such a creditor could bring." *In re Extended Stay, Inc.*, Nos. 09-13764-JLG, 11-02254-JLG, 2020 Bankr. LEXIS 2128, at *101 (Bankr. S.D.N.Y. Aug. 8, 2020).

The fraudulent conveyance claims are brought by Plaintiff in his capacity as successor in interest to the creditors of the bankruptcy estate as opposed to in his capacity as successor in interest to the debtor. Accordingly, Gilad's release of Fitoussi does not bar Plaintiff from asserting claims to avoid fraudulent conveyances. *See In re Upper Crust, LLC*, 554 B.R. 23, 32-33 (Bankr. D. Mass. 2016) (release executed by the debtor did not release claims asserted by chapter 7 trustee; trustee asserted claims, not as successor to debtor's pre-petition causes of action, but as creditor holding an allowable unsecured claim under Bankruptcy Code section 544 or under Bankruptcy Code section 548); *Cf. Allegaert v. Perot*, 548 F.2d 432, 436 (2d Cir. 1977) (prepetition debtor could not bind trustee to prepetition agreement to arbitrate avoidance claims because those claims are "statutory causes of action belonging to the trustee, not to the bankrupt, and the trustee asserts them for the benefit of the bankrupt's creditors, whose rights the trustee enforces.").

### IV.    Plaintiff's Claims to Avoid and Recover Constructive Fraudulent Transfers under New York's Debtor and Creditor Law are Well Pled

Plaintiff seeks to avoid and recover $6 million of transfers to Fitoussi and a $3 million transfer to Ori Management under New York Debtor and Creditor Law (the "DCL") sections 273, 274, 275.[2]

Under the DCL[3], a transfer by a debtor is deemed fraudulent if it is made without "fair consideration" and if one of the following conditions is met: (i) the transferor is insolvent or will be rendered insolvent by the transfer in question, DCL § 273; (ii) the transferor is engaged in or is about to engage in a business transaction for which its remaining property constitutes unreasonably small capital, DCL § 274; or (iii) the transferor believes that it will incur debt beyond its ability to pay, DCL § 275. *See In re Allou Distributors, Inc.*, 404 B.R. 710, 715-17 (Bankr. E.D.N.Y. 2009) (citing *Sharp Int'l Corp. v. State St. Bank and Trust Co. (In re Sharp Int'l Corp.)*, 403 F.3d 43, 53 (2d Cir.2005)).

Under New York law, fair consideration is given for property: "(a) when in exchange for such property … as a fair equivalent therefor, and in good faith, property is conveyed or an antecedent debt is satisfied."  N.Y. Debt. & Cred. Law § 272.  "[F]air consideration has two components—the exchange of fair value and good faith—and both are required."  *In re Allou*

---

[2] The First, Second, Sixth, and Seventh Causes of Action are stylized as separate causes of action to avoid fraudulent transfers under Bankruptcy Code sections 544 and 550.  Bankruptcy Code section 544 empowers a chapter 7 trustee to bring certain causes of action on behalf of creditors and Bankruptcy Code section 550, among other things, empowers the chapter 7 trustee to recover avoided transfers from immediate and mediate transferees.  Combined, these sections permit Plaintiff to commence actions under non-bankruptcy law to avoid and recover transfers but do not set forth a separate basis to avoid and recover transfers.

[3] The DCL was amended by the "Uniform Voidable Transactions Act" (the "EVTA") on December 6, 2019, effective April 4, 2020, N.Y. Legis. 580 § 7 (2019).  The UVTA applies to transfers made or obligations incurred after the April 4, 2020 effective date. *Id.; see also In re Tops Holding II Corp.*, 646 B.R. 617, 642 n.37 (Bankr. S.D.N.Y. 2022), leave to appeal denied, No. 22-CIV-9450 (NSR), 2023 WL 119445 (S.D.N.Y. Jan. 6, 2023).  The transfers at issue in this adversary proceeding predate the UVTA's effective date.

*Distributors, Inc.*, 404 B.R. at 716 (citations and internal quotations omitted). "[T]he good faith at issue is that of the transferee." *Id.* at 717 (citing *In re Sharp Int'l Corp.*, 403 F.3d at 54 n.4).

First, Fitoussi and Ori Management claim the fraudulent conveyance claims fail because Plaintiff does not allege Gilad made the payments to Fitoussi and Ori Management. Defs. Fitoussi and Ori Management's Mot. to Dismiss Adv. Pro. and Supp. Mem. of Law and Joinder ¶ 25, Adv. Pro., ECF No. 19. Rather, Fitoussi and Ori Management claim the payments were made by Brookland or Prophet. *Id.* However, the Complaint alleges:

- In total, Gilad transferred, or caused to be transferred on his behalf and for his benefit, and Fitoussi received, either directly or for his benefit through Ori Management, the sum of at least $6,000,000. Compl. ¶ 50, Adv. Pro., ECF No. 1.

- Fitoussi, or his company Ori Management, received at least $6,000,000 in payments from or on behalf of Gilad in connection with the sale as follows: (i) on May 2, 2017, Fitoussi received a payment of $1,600,000; (ii) in September 2017, Fitoussi received a payment of $1,200,000; and (iii) in November 2017, Fitoussi and/or Ori Management received a payment of $3,200,000. *Id.* ¶ 70.

Therefore, the Complaint does allege that payments were made by Gilad or on Gilad's behalf.

Second, Fitoussi and Ori Management claim the payments were not from Gilad but came from Brookland or Prophet. Defs. Fitoussi and Ori Management's Mot. to Dismiss Adv. Pro. and Supp. Mem. of Law and Joinder ¶ 25, Adv. Pro., ECF No. 19. That the payments were made from Brookland's or Prophet's accounts does not require dismissal of the claims as a matter of law because Gilad may have had an interest in those funds. *Cf. Goven v. The Patriot Group, LLC*, 452 B.R. 391, 415 (Bankr. S.D.N.Y. 2011) (alleged preferential transfers recoverable if transferred property was estate property; estate property included all legal or equitable interests of the debtor). The Prophet Agreement submitted by Fitoussi supports the contention that Gilad had an interest in the funds paid by Prophet to Fitoussi or Ori Management. Decl. of Cavaliere in Supp. of Defs. Fitoussi and Ori Management's Mot. to Dismiss Ex. 3, Adv. Pro., ECF No. 20 ("[Prophet] has agreed [sic] make a loan to [Gilad, as purchaser] (the "Loan") to fund the Final Installment."). The

extent to which the estate had an interest in the Brookland or Prophet payments is a question of fact that should be determined after the Court considers the evidence.

Third, Fitoussi and Ori Management argue the fraudulent conveyance claims fail based on the earmarking doctrine. Earmarking is a judicially created doctrine invoked as an equitable defense to an avoidance action. *See In re Grabill Corp.*, 135 B.R. 101, 108 (Bankr. N.D. Ill 1991) (permitting earmarking as an equitable defense to preference action). Typically, the doctrine is invoked by a defendant in a preference or fraudulent conveyance action when a creditor, who was a co-obligor with the debtor (e.g., as a guarantor or surety), provides the debtor with funds for the purpose of paying the debt owed to the defendant. In such cases, courts reason the transfer did not diminish the funds available to pay other creditors, and therefore, the payment should not be avoided. *See Manchester v. First Bank & Trust Co.* (*In re Moses*), 256 B.R. 641, 645–46 (B.A.P. 10th Cir. 2000) (collecting cases).

Fitoussi and Ori Management provided the Court with affidavits and documents (including documents filed on the Bankruptcy Case's claims register) in support of the earmarking defense. Decl. of Cavaliere in Supp. of Defs. Fitoussi and Ori Management's Mot. to Dismiss, Adv. Pro., ECF No. 20; Suppl. Decl. of Cavaliere in Supp. of Defs. Fitoussi and Ori Management's Reply in Resp. to Pl.'s Mem. of Law in Opp'n to Defs. Fitoussi and Ori Management's Mot. to Dismiss, Adv. Pro., ECF No. 42.

The Court will not consider Fitoussi and Ori Management's affidavits and other submissions offered in support of their earmarking defense because Plaintiff was not on notice that this Court was treating the Fitoussi Motion as a motion for summary judgment. *See Krijn v. Pogue Simone Real Est. Co.*, 896 F.2d 687, 689 (2d Cir. 1990) (Rule 12(c) requires that "all parties shall be given reasonable opportunity to present all material made pertinent to such a motion by Rule

56.").  In addition, although permitted to treat a "speaking motion" as one for summary judgment, a motion to dismiss is not meant to resolve "disputes on the basis of affidavits and other pretrial data when there is a material issue of fact that justifies a trial on the merits."  § 1366 Conversion of a Rule 12(b)(6) Motion Into a Summary Judgment Motion, 5C Fed. Prac. & Proc. Civ. § 1366 (3d ed.).  Furthermore, although the Court may take judicial notice of documents filed on the Bankruptcy Case's docket or claims register, the doctrine of judicial notice would not permit this Court to accept as true the hearsay statements contained in the publicly filed documents.  *See Kramer v. Time Warner Inc.*, 937 F.2d 767, 774 (2d Cir. 1991) (stating courts routinely take judicial notice of publicly filed documents but not for the truth of the matters asserted); *In re Scarpinito*, 196 B.R. 257, 267 (Bankr. E.D.N.Y. 1996) ("While a bankruptcy judge may take judicial notice of a bankruptcy court's records . . . we may not infer the truth of facts contained in documents, unfettered by rules of evidence or logic, simply because such documents were filed with the court.") (citations omitted).

Fourth, Fitoussi and Ori Management claim the fraudulent conveyance claims must be dismissed because the Complaint fails to adequately allege Gilad's insolvency as of the date of the transfers.  The Complaint alleges:

- As of the petition date, Gilad was "balance sheet insolvent" in that the sum of his debts was greater than all of his assets at fair valuation.  Compl. ¶ 24, Adv. Pro., ECF No. 1.

- According to Gilad's *Summary of Your Assets and Liabilities and Certain Statistical Information* and amended Schedule E/F, as of the petition date, Gilad had liabilities of $243,375,803.53 and assets of $2,547.21, for a net deficit of minus $243,373,256.32.  *Id.* ¶ 25.

- Gilad defaulted on both the August 2 and November 2 payments evidencing the fact that the initial payment of $1,380,000 and the May 16, 2017 payment of $220,000 rendered Gilad insolvent and that Gilad did not have the ability to pay his debts as they matured.  *Id.* ¶¶ 27, 28.

The Complaint does not allege facts concerning Gilad's financial condition as of the dates of the transfers. However, the allegations concerning Gilad's insolvency or undercapitalization are factual allegations from which the Court may reasonably infer that Gilad was insolvent or undercapitalized as of the dates of the transfers.

Fifth, Fitoussi and Ori Management argue the fraudulent conveyance claims must be dismissed because the Complaint fails to allege a lack of fair consideration.

The Complaint alleges:

- At the time of the sale, the Brookland Entities were highly leveraged and Fitoussi knew, or should have known, that his interest in those entities was worth little to no value. *Id.* ¶ 2.

- Gilad did not receive fair consideration or reasonably equivalent value for the transfers as Fitoussi's equity interest in the Brookland Entities at the time of the sale was worth little to no value. *Id.* ¶ 51

- According to Brookland's "Balance Sheet per Books" attached to its 2017 Federal Tax Return, as of December 31, 2017, Brookland claimed it had assets of $12,040,027 and liabilities of $11,055,595 for a theoretical surplus of $984,432. *Id.* ¶ 52.

- According to Elevation's "Balance Sheet per Books" attached to its 2017 Federal Tax Return, as of December 31, 2017, Elevation claimed that it had total assets of $6,472,700 and total liabilities of $5,616,656 for a theoretical surplus of $856,044. *Id.* ¶ 53.

- According to Tirios's 2017 Federal Tax Return, as of December 31, 2017, Tirios had neither liabilities nor assets. *Id.* ¶ 54.

- Fitoussi and Babila were secretly working together to increase the sale purchase price in favor of Fitoussi and to kick back monies to Babila. *Id.* ¶ 3.

- Pursuant to the terms of the Consulting Agreement, Lior Advisors was to receive ten percent of all proceeds or any consideration received by Fitoussi in connection with Fitoussi's sale of his equity interest in the Brookland Entities to Gilad. All the while, Babila was the Chief Financial Officer of Brookland. *Id.* ¶ 4.

Certain of the allegations, including allegations referencing the tax returns, are factual allegations that support Plaintiff's contention that the transfers were made for less than a fair

equivalent value. Additionally, the allegations concerning the Consulting Agreement are factual allegations from which the Court may reasonably infer that Fitoussi and Ori Management lacked good faith. Based on the foregoing allegations, the Court finds the Complaint includes sufficient factual allegations from which the Court may reasonably infer that Gilad did not receive fair consideration.

## V.    The Court Grants Plaintiff's Request to Amend the Eleventh Cause of Action for Fraud Against Babila and Lior Advisors.

To state a claim for fraud under New York law, a plaintiff must allege: (1) a misrepresentation or material omission of fact known to be false by defendant; (2) made with the intention of inducing the other party to rely upon it; (3) justifiable reliance of the other party on the misrepresentation or material omission; and (4) injury. *See Wynn v. AC Rochester*, 273 F.3d 153, 156 (2d Cir. 2001).

Under Federal Rule of Civil Procedure 9(b), fraud must be pled with particularity. *See Eternity Global Master Fund Ltd. v. Morgan Guar. Trust Co*., 375 F.3d 168, 187 (2d. Cir. 2004). Rule 9(b) applies to allegations of fraudulent omission as well as fraudulent misrepresentation. *See In re Delphi Corp*., No. 05-44481(RDD), 2008 WL 5146952, at *1, *3 (Bankr. S.D.N.Y. Nov. 19, 2008); *In re Monahan Ford Corp. of Flushing*, 340 B.R. at 21. "However, given that there is no speaker and no communication, the pleading requirements are somewhat different for fraudulent omissions than affirmative misstatements or affirmatively fraudulent statements." *In re Delphi Corp*., 2008 WL 5146952, at *3.

To plead a fraudulent omission with particularity, "the complaint must specify: 1) what the omissions were, 2) the person responsible for the failure to disclose, 3) the context of the omissions and the manner in which they misled the plaintiff, and 4) what defendant obtained through the fraud." *Id.* (citing *T.L.O. v. Monsanto Company,* 522 F.Supp.2d 524 (S.D.N.Y. 2007)). An

omission supports a cause of action for fraud only if the non-disclosing party had a duty to disclose. *Id.* (internal citations omitted). A duty to disclose arises where the parties are in a fiduciary relationship. *See id.*

Intent may be averred generally under Rule 9(b). *See In re Monahan Ford Corp. of Flushing*, 340 B.R. at 28; *In re Allou Distributors, Inc.*, 387 B.R. 365, 385 (Bankr. E.D.N.Y. 2008). This is because "a plaintiff realistically cannot be expected to plead a defendant's actual state of mind." *In re Monahan Ford Corp. of Flushing*, 340 B.R. at 28 (citing *Wight v. BankAmerica Corp.*, 219 F.3d 79, 91 (2d Cir. 2000) (internal citation omitted). Conclusory allegations of scienter are sufficient "if supported by facts giving rise to a strong inference of fraudulent intent." *Id.* (internal citations and quotations omitted). Fraudulent intent may be inferred "(a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *In re Allou Distributors, Inc.*, 387 B.R. at 385.

Babila and Lior Advisors argue the fraud claim must be dismissed because the Complaint fails to allege intent or justifiable reliance and fails to meet Rule 9(b)'s particularity requirements. Defs. Babila and Lior Advisors' Mem. of Law in Supp. of Mot. to Dismiss ¶¶ 21, 23-27, Adv. Pro., ECF No. 17.

The Complaint alleges:

- As the Chief Financial Officer of Brookland, Babila owed a fiduciary duty to Gilad, including among other things, the duty of loyalty and the duty of disclosure. Compl. ¶ 171, Adv. Pro., ECF No. 1.

- Babila, as Brookland's Chief Financial Officer, breached his fiduciary duty to Gilad pursuant to New York law by, among other things: (i) secretly working with Fitoussi, Gilad's business partner, to increase the sale purchase price in favor of Fitoussi and to kick back monies to Babila; (ii) not acting in the best interests of Gilad (a member of Brookland); (iii) having a conflict of interest; and (iv) failing to disclose his secret relationship with Fitoussi to Gilad. *Id.* ¶ 172.

- Unbeknownst to Gilad, Fitoussi and Babila were secretly working together to increase the sale purchase price in favor of Fitoussi and to kick back monies to Babila. *Id.* ¶ 3.

- Fitoussi, Babila, and Lior Advisors perpetrated a fraud against Gilad by, among other things, failing to disclose that: (i) Babila, Brookland's Chief Financial Officer, was secretly working for Fitoussi; (ii) Fitoussi and Babila were conflicted; and (iii) Fitoussi and Babila were obviously working together to increase the sale purchase price in favor of Fitoussi and to kick back monies to Babila. *Id.* ¶ 151.

- Fitoussi, Babila, and Lior Advisors knew that their actions were fraudulent because they waited to enter into the Consulting Agreement until after Gilad executed the Purchase Agreement and was "locked-into" the Purchase Agreement. *Id.* ¶ 152.

- In addition, Fitoussi, Babila, and Lior Advisors knew that their actions were fraudulent because they chose Israel as a choice of venue and Israeli law to govern the Consulting Agreement despite the fact that both Fitoussi and Babila were New York residents, and Lior Advisors was a domestic New York corporation. And the reason why Fitoussi, Babila, and Lior Advisors chose Israel as a venue and Israeli law as opposed to a New York State court and New York law is because if there was ever a dispute regarding the Consulting Agreement, any court record of that dispute would not appear in the United States and Gilad would have less of a chance of discovering the Consulting Agreement and that Fitoussi, Babila, and Lior Advisors conspired against Gilad. *Id.* ¶ 153.

The Complaint adequately pleads a material omission. The material facts that were allegedly not disclosed to Gilad were Babila's and Lior Advisor's relationship with Fitoussi, Babila's and Lior Advisor's economic interest in Fitoussi's sale of his stake in the Brookland Entities, and that the Brookland Entities were worthless. The Complaint alleges Babila was responsible to disclose those facts to Gilad because Babila, as Brookland's Chief Financial Officer, owed a fiduciary duty to Gilad. The Complaint alleges the context of the omissions and how they misled Gilad. In that regard, the Complaint alleges Babila failed to disclose the Consulting Agreement and the correct value of Fitoussi's interests in Brookland in the context of Gilad's purchase of those same interests. The Complaint also alleges that the omissions misled Gilad into paying $6 million for worthless equity interests. Lastly, the Complaint alleges that Babila and Lior

Advisors obtained the right to receive ten percent of Fitoussi's sale proceeds as a result of the fraudulent omissions.

The Complaint sufficiently alleges scienter.  Plaintiff is not required to allege scienter or knowledge with particularity.  *See In re Monahan Ford Corp. of Flushing*, 340 B.R. at 28; *In re Allou Distributors, Inc*., 387 B.R. 365, 385 (Bankr. E.D.N.Y. 2008).  The Court may infer fraudulent intent from allegations showing Babila and Lior Advisors had motive and opportunity to commit fraud.  The Complaint alleges motive through allegations that Babila and Lior Advisors would receive ten percent of the sale proceeds received by Fitoussi.  The Complaint alleges opportunity through its allegation that Babila was Brookland's Chief Financial Officer, from which the Court may infer that Babila had control over the Brookland Entities' financial information.

The Complaint also alleges injury.  The Complaint alleges Gilad paid $6 million to Fitoussi or for his benefit for worthless interests.

The Complaint faulters somewhat in its allegations of the third element – reasonable reliance.  On the one hand, the Court may infer Gilad reasonably relied on Babila in connection with Gilad's purchase of the Brookland interests because Babila was Brookland's Chief Financial Officer.  On the other hand, the Complaint does not allege what financial information, if any, Gilad considered concerning his entry into the Purchase Agreement nor does the Complaint allege that the financial information was prepared, furnished, or endorsed by Babila.

Plaintiff argues he should be granted leave to replead because there are additional facts he could allege concerning Gilad's reasonable reliance on Babila's omissions.  Pl.'s Mem. of Law in Opp'n to Defs. Babila and Lior Advisors' Mot. to Dismiss ¶¶ 21, 22, Adv. Pro., ECF No. 29.  Some of Plaintiff's proposed amendments are factual allegations from which the Court could infer reasonable reliance.  *Id.*  ¶ 22 ("Babila, as Brookland's CFO, was in charge of Brookland's finances

26

and that all of Brookland's finances went through Babila."; "[T]he entire transaction was based on Babila's financials, which Babila provided to his friends/contacts at a business valuation firm, which in turn, Babila's friends/contact (using Babila's financials), came to a value for Brookland.").

Plaintiff, who is the trustee, would not have firsthand knowledge of the information on which Gilad relied in fixing the purchase price for the Brookland interests.  Additionally, Plaintiff laments he only learned of the transaction days before the expiration of the statute of limitations. Compl. ¶ 6, Adv. Pro., ECF No. 1; Tr. of May 16, 2023 Hr'g __:__.  Accordingly, the Court should apply a more liberal standard to these allegations.  *See In re Allou Distributors, Inc*., 387 B.R. at 385 ("A more liberal standard has been applied to fraud allegations in bankruptcy cases.") (citing *In re Monahan Ford Corp. of Flushing*, 340 B.R. at 21; *Harrison v. Entm't, Inc.* (*In re Rave Commc'ns, Inc.*)*,* 138 B.R. 390, 396 (Bankr.S.D.N.Y.1992); *Wieboldt Stores, Inc. v. Schottenstein,* 94 B.R. 488, 498 (N.D. Ill. 1988)).  Additionally, leave to amend should be granted freely.  *See In re Ridley*, 453 B.R. 58, 77 (Bankr. E.D.N.Y. 2011) (citing *In re Ashanti Goldfields Sec. Litig.,* 2004 WL 626810, at *2 (E.D.N.Y. Mar. 30, 2004)); *In re Brizinova*, 554 B.R. 64, 88 (Bankr. E.D.N.Y. 2016) ("Where a plaintiff has made a single attempt to state a claim, and the prospect of a plausible claim is suggested, but not established, by the allegations, then it may be that a court's discretion should tip in favor of allowing an amendment.").

For these reasons, the Court grants Plaintiff's request to amend the Complaint's Eleventh Claim for Relief for fraud against Babila and Lior Advisors.

## <u>CONCLUSION</u>

For the reasons set forth above:

1.      The Fitoussi Motion is denied to the extent it seeks dismissal of the First, Second, Third, Fourth, Fifth, Sixth, Seventh, Eighth, Ninth, and Tenth Claims for Relief.

2.      The Fitoussi Motion is granted to the extent it seeks (a) dismissal of the Eleventh Claim for Relief as to Fitoussi; and (b) dismissal of the Twelfth Claim for Relief.

3.      The Babila Motion is denied to the extent it seeks (a) dismissal of the Eleventh Claim for Relief as to Babila and Lior Advisors; and (b) dismissal of the Thirteenth Claim for Relief.

4.      Plaintiff's request for leave to amend the Eleventh Claim for Relief solely respecting Babila and Lior Advisors is granted.

5.      Plaintiff's amended complaint shall be filed and served by September 25, 2023.

6.      Defendants shall answer, move, or otherwise respond to the amended complaint within twenty-one (21) days after the amended complaint is filed on the docket.

7.      Plaintiff shall submit an order consistent with this memorandum decision within three business days of entry of this memorandum decision.



Dated: September 3, 2023
       Brooklyn, New York

Jil Mazer-Marino
United States Bankruptcy Judge

28